## STATE OF NORTH CAROLINA v. TOMMIE CRUMP

### No. 84

### (Filed 9 February 1972)

1. **Criminal Law §§ 68, 79; Kidnapping § 1— statements in furtherance of common design— competency against all defendants — testimony placing kidnappers and victim together**

   In this kidnapping prosecution, testimony that one of the defendants asked the victim "if he had any jumping cables and would help start their car," and also asked the victim if he could take his car, *held* competent against both defendants, notwithstanding the witness testified that she did not know which defendant made the statements, since defendants were jointly engaged in an illegal mission and the statements were made in furtherance of a common design, and since the testimony was relevant on the question of identity in that it placed the kidnappers and their victim together at the time and place in question.

2. **Criminal Law §§ 73, 81— hearsay evidence — best evidence rule**

   Testimony by a kidnap victim that he had told a police officer that he could recognize the kidnappers was not hearsay and did not violate the best evidence rule.

3. **Kidnapping § 1— sufficiency of evidence**

   The State's evidence supports the jury's verdict finding the defendant guilty of kidnapping and judgment pronounced thereon.

DEFENDANT appeals from *Thornburg, J.*, 3 May 1971 Session, HENDERSON Superior Court. This case was docketed as No. 152 and argued at the Fall Term 1971.

Defendant was tried on a bill of indictment, proper in form, charging him with kidnapping Michael Penland on 19 April 1971.

The State's evidence—defendant offered none—tends to show that Michael Penland was employed in a grocery store in Hendersonville, owned and operated by Mrs. Helen Andrews. On 19 April 1971 at 10:40 p.m., Tommie Crump and Edward Scott went to the grocery store and inquired about a jumper cable to start their car. Michael Penland agreed to assist them and, when the store closed at 11 p.m., they got in his car and the three left together. Tommie Crump stuck a pistol in Michael's ribs and told him to follow Mrs. Andrews, the owner of the store who had just driven away. They asked Michael "if she had the money." Michael told them it wouldn't do any good because Mrs. Andrews had locked the money in the safe. The defendant and Edward Scott then abandoned the idea of follow-

ing her and told Michael to take them down the road to their car. Michael followed orders and eventually discovered they had no car and that their story about a dead battery was false. Defendant continued to hold the pistol on Michael, and he drove up and down various streets as directed, eventually arriving at a dirt road where Crump told him to stop the car and open the trunk. When he did so, defendant told him to get in the trunk and fired the pistol into the weeds to demonstrate the gun was real. When Michael pleaded with him, defendant changed his mind, put Michael in the front seat on the passenger side, and Edward Scott drove Michael's car from that point. Eventually, under orders of defendant, Michael resumed the driving duties. Defendant and Edward Scott told him they were going to rob a service station, and Michael drove them to a Shell station on the Chimney Rock Highway. Discovering people about the station, they did not stop but drove back toward Hendersonville, and defendant ordered Michael to drive him to Asheville. He still had the gun in his hand. They drove to Fletcher and defendant then ordered Penland to take him back to the Skyline Drive-In at Hendersonville. They sat in the car at the drive-in about three minutes and then drove to a wooded area near Boyd's Pontiac place where defendant and Edward Scott got out of the car. Michael went directly to Mrs. Andrews' house and told her what had occurred.

Penland testified that he drove his car to all the places enumerated because defendant was holding a gun on him and he was afraid.

This case was consolidated by consent with the case against Edward Scott who was also charged with kidnapping. The jury convicted both defendants. Edward Scott did not appeal, and the judgment as to him is not in the record. Defendant Crump was sentenced to State Prison for a period of fifteen years and appealed to the Court of Appeals at State expense and with appointed counsel. The case was transferred to the Supreme Court for initial appellate review under our general referral order dated 31 July 1970.

*Redden, Redden & Redden, by Monroe M. Redden, Attorneys for defendant appellant.*

*Robert Morgan, Attorney General, and Donald A. Davis, Staff Attorney, for the State of North Carolina.*

HUSKINS, Justice.

Mrs. Andrews was allowed to testify over objection: "I had never seen the boys before, but anyway in the conversation, they asked Michael, one of them, I don't know which,—if he had any jumping cables and would help them start their car. I told Michael it was too near time to close and he had too much work to do to leave." At another point in her testimony, she said over objection: "I don't know which one said it . . . but one said, 'Michael, can you take your car?'" Defendant's first assignment of error is predicated on the admission of this evidence. He contends it was incompetent "absent a finding of conspiracy."

The evidence shows that this defendant and Edward Scott were jointly engaged on an illegal mission. They were acting in unison in furtherance of a common design. The evidence gives rise to the permissible inference that they had conspired together to rob Mrs. Andrews and the kidnapping of Michael Penland was necessary to accomplish that objective—they needed transportation. Therefore, statements made in furtherance of the common design, whether by the defendant or his partner in crime, are competent. *State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487 (1970). Moreover, the evidence objected to was relevant on the question of identity since it placed the kidnappers and their victim together at the time and place in question. "Any evidence which is relevant to the trial of a criminal action is admissible." *State v. Winford,* 279 N.C. 58, 181 S.E. 2d 423 (1971). Furthermore, Michael Penland testified substantially to the same effect without objection, and the admission of this evidence from Mrs. Andrews was largely cumulative and could not have changed the result of the trial. An appellant must show that evidence alleged to be erroneous was prejudicial and that a different result but for the error would have likely ensued. *State v. Woolard,* 260 N.C. 133, 132 S.E. 2d 364 (1963); *State v. Sanders, supra.* We hold the evidence was competent. Had it been incompetent, its admission would have been entirely harmless. Stansbury, North Carolina Evidence (2d Ed.) § 9.

Included as part of defendant's first assignment of error is the following question propounded to Michael Penland on direct examination and his answer thereto over objection:

"Q. Did you tell DeBois Edmundson whether or not you could recognize the two men who had been in your car during the course of that night?

"A. Yes, sir."

Defendant contends such testimony violates the hearsay rule and the best evidence rule. Michael Penland's testimony as to what he told Officer Edmundson *is* the best evidence, and the officer's testimony would have been competent only to corroborate what the victim told him. Furthermore, the testimony is not hearsay. Its probative force does not depend upon the competency and credibility of any person other than the witness himself. Hence it cannot be classified as hearsay. Stansbury, North Carolina Evidence (2d Ed.), Hearsay, § 138. We find no merit in any of the three exceptions upon which the first assignment of error is based.

Defendant's remaining assignments are formal and require no discussion. The uncontradicted evidence proves kidnapping beyond a reasonable doubt, *State v. Ingland,* 278 N.C. 42, 178 S.E. 2d 577 (1971); *State v. Murphy,* 280 N.C. 1, 184 S.E. 2d 845 (1971), and supports the verdict and judgment. The only error appearing in this record was committed by the defendant and his partner in crime when they embarked upon their unlawful mission which culminated in the kidnapping of Michael Penland.

In the trial below we find

No error.