STATE OF NORTH CAROLINA v. HERBERT HILL WILLIS

No. 29

(Filed 10 April 1974)

1. Criminal Law § 86— improper impeaching question — no prejudicial error

In a prosecution for traveling 90 mph in a 65 mph zone, defendant was not entitled to a new trial where the court overruled his objection

to the solicitor's improper question, "Did you see Trooper Willis [who was asked to stand] . . . when he clocked you travelling 94 miles per hour in a 65 mile zone?"

**2. Criminal Law § 169— objection to testimony — inclusion of testimony in record**

Where objections to questions are sustained and counsel wishes to insert in the record what the witnesses' answers would have been, the better practice is to excuse the jury and complete the record in open court in the absence of the jury.

**3. Automobiles § 117; Criminal Law § 114— instructions — comment by court**

In a prosecution where defendant was charged with speeding, trial court's remark in explaining the speeding statute, "which doesn't make one bit of sense on earth," was not prejudicial to defendant.

**4. Criminal Law § 157— necessary parts of record on appeal**

A case on appeal must show the organization of the trial court, a valid charge (information, warrant or indictment), arraignment and plea, verdict, judgment, and appeal entries.

**5. Criminal Law § 157— sufficiency of record on appeal**

The record on appeal in a speeding case, though deficient in certain particulars, nevertheless contained enough information from which the Supreme Court could conclude that the superior court was regularly held and had jurisdiction of· the defendant and of the offenses charged.

ON *certiorari* to the North Carolina Court of Appeals to review its decision filed November 28, 1973, finding no error in the trial of Herbert Hill Willis in the Superior Court of ALAMANCE COUNTY at the April 30, 1972 Session on a charge of operating a motor vehicle on the public highway in Alamance County at a speed of ninety miles per hour in a sixty-five mile per hour zone. This Court allowed certiorari on January 9, 1974.

*Robert Morgan, Attorney General, by William Melvin and William B. Ray, Assistant Attorneys General for the State.*

*Alston, Pell, Pell & Weston by E. L. Alston, Jr.; Brough-ton, Broughton, McConnell & Boxley, P.A., by Melville Brough-ton, Jr., and William G. Ross, Jr., for defendant appellant.*

HIGGINS, Justice.

The record certified here for our review contains a blank (unsigned) affidavit purported to have been made by E. W. Clemmons before _____ Magistrate/Assistant Deputy Clerk of Superior Court. The unsigned warrant contains two

State v. Willis

counts: first, for operating a motor vehicle on the public highway at a speed of ninety miles per hour in a sixty-five mile per hour zone; and second, for operating a motor vehicle on the public highway while under the influence of intoxicating liquor. An unauthenticated and unsigned entry in the case on appeal filed in the North Carolina Court of Appeals recites: "DISTRICT COURT JUDGMENT. Let the Defendant pay a fine of $50.00 and the costs of Court." Defendant gave notice of appeal to the superior court. Bond of $600.00 was required. The record fails to show the verdict entered in the district court.

The next entry is a stipulation signed by the solicitor and defense counsel at the April 30, 1972 Regular Session of Alamance Superior Court which recited that the court convened with Judge James H. Pou Bailey presiding. The defendant entered a plea of not guilty. The jury returned a verdict "Guilty as charged" on the count which charged operating a vehicle on the public highway at a speed of ninety miles per hour in a sixty-five mile per hour zone. The defendant did not challenge the sufficiency of the warrant issued in the district court. The trial in the superior court was *de novo*. The superior court seems to have had jurisdiction of the offense and the alleged offender.

The State's witness, Colonel Guy of the State Highway Patrol, testified that on the night of June 4, 1970, he and Mr. Fred Morrison, Jr., were driving north on I-85 in Alamance County at about sixty miles per hour when he observed the lights of a vehicle approaching from the rear and that the vehicle passed at a high rate of speed. He gave chase and clocked the vehicle at ninety miles per hour. He finally, by means of his siren and light, induced the driver to stop. Some difficulty (not the subject of the criminal charge) occurred between the defendant and the witness.

E. W. Clemmons, a member of the State Highway Patrol, testified that he received from Colonel Guy a radio message, and in response went to the Huffine Mill Road exit where he saw the defendant in custody. The witness testified: "I detected a strong odor of alcoholic beverages, and he staggered when he walked." On cross-examination, defense counsel asked the witness if he heard Colonel Guy's testimony. He answered, "Yes, sir" and continued: "I recorded Mr. Willis' license number on the ticket. Q. And that wasn't the same license number Colonel Guy testified was on the car, was it?" The court sus-

tained the objection. No effort was made at the time to have the answer the witness would have given placed in the record. The State rested.

The defendant testified that his speed was not at any time in excess of the posted speed limit of sixty-five miles per hour. He testified that he had not been drinking and that Officer Guy assaulted him at the time of the arrest. On cross-examination the defendant, having been asked about his prior traffic violations, made this admission: "I think I have about twenty-three speeding convictions in my lifetime." Question by solicitor: "Did you see Trooper Willis—Trooper Willis, will you stand up, please. On September 19, 1971, did you see that highway patrolman, [indicating Trooper Willis] when he clocked you traveling 94 miles per hour in a 65 mile zone? (A state highway patrolman, in uniform, stands.)" The court overruled the defendant's objection. "A. I was not speeding that fast that day."

Beatrice Cross, a witness for the defendant, testified she was driving in front of the defendant just before he parked at the Huffine Mill exit (where he was arrested). ". . . I was driving my car between 60 and 65 miles per hour, and staying in front of Mr. Willis. . . . Mr. Willis had nothing to drink."

After defense counsel rested, he moved that he be allowed to insert in the record of the case on appeal the answers the witnesses would have given but for the court's ruling sustaining the State's objections.

"The ruling of the Court on this motion is as follows: All right, let the record show that Mr. Alston moved that he be allowed at this stage to put into the record what certain answers would have been to questions to which objections were sustained by the trial court. Let the record further indicate that no request was made at the time the question was asked, or at the time the ruling was made, that the witness be permitted to put his answer in the record. The request to do so now is denied. Defendant Excepts."

In rebuttal the State called Fred Morrison, Jr., who testified that he was a passenger in Colonel Guy's automobile during the chase prior to the defendant's arrest. He testified the defendant passed at a speed he estimated to be between ninety and one hundred miles per hour.

---

State v. Willis

---

The jury returned a verdict of guilty as charged. The court imposed a prison sentence of ninety days. Defendant appealed to the North Carolina Court of Appeals. The decision finding no error in the trial is recorded in 20 N.C. App. 43, 200 S.E. 2d 408.

[1] The defendant alleges prejudicial error on account of the solicitor's question addressed to the defendant on cross-examination, "Did you see Trooper Willis? [who was asked to stand] . . . when he clocked you traveling 94 miles per hour in a 65 mile zone?" The objection was overruled and the defendant answered, "I was not speeding that fast that day." The question was not fairly phrased. The defendant answered that he was not speeding that fast.

The prosecutor did not ask if the defendant had been indicted or if he had been arrested by Trooper Willis or if he had been accused. He was not asked whether he was speeding ninety-four miles per hour in a sixty-five mile zone. But the solicitor was patently "fudging a little" in framing the question. However, the cases cited, *State v. Gainey,* 280 N.C. 366, 185 S.E. 2d 874, and *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174, are not authority for a new trial on the facts of this case. The off-color question, in view of the State's evidence, did not have controlling effect on the outcome of the trial. No doubt the conviction resulted from the testimony of Patrolman Guy and Mr. Morrison and the defendant's admission, "I think I have about twenty-three speeding convictions in my lifetime." The irregularity in framing an impeaching question was insufficient to send the case back for another trial. The burden is on the defendant not only to show error, but also to show that the error complained of may have affected the result adversely to him. Strong, N. C. Index 2d, Vol. 3, Criminal Law, Harmless Error, § 167. *State v. Williams,* 279 N.C. 515, 184 S.E. 2d 282; *State v. Paige,* 272 N.C. 417, 158 S.E. 2d 522; *State v. Brown,* 271 N.C. 250, 156 S.E. 2d 272; *Fahy v. Conn.,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229.

[2] The defendant's other major objection was to the trial court's refusal to let counsel insert in the record what the witnesses' answers would have been if the objections had not been sustained. The motion to permit the defense counsel to insert the answers in the case on appeal was not made until after the defendant had rested. The record does not indicate whether the

witnesses were still in court or were available so that their answers could be obtained.

The practice of permitting counsel to insert answers rather than have the witness give them in the presence of the court should not be encouraged. The words of the witness, and not the words counsel thinks the witness might have used, should go in the record. Ordinarily the trial judge should hear the answers. The better practice is to excuse the jury and complete the record in open court in the absence of the jury.

[3]    The defendant also objected to the trial on the ground the court, in the charge, found fault with the wording of the speeding statute involved in this case. The court, in explaining the speeding statute, stated: "[W]hich doesn't make one bit of sense on earth." The objection is the subject of Exception No. 5. The court, however, charged:

> "Thus, I charge you, that if you find from the evidence and beyond a reasonable doubt that on or about the 4th of June, 1970, Herbert Hill Willis drove his Lincoln Continental car along and over I-85, at a speed greater than the posted speed limit, to wit: sixty-five miles per hour, if you believe that to be the posted limit from the evidence, and you further find that sixty-five was the speed limit, posted by proper authorities, it would be your duty to return a verdict of guilty of exceeding the posted limit. However, if you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of Not Guilty."

The jury trial was not the proper place for the court to criticize the law under which the defendant was being tried. However, the criticism of the statute under which the defendant was charged would appear to react in favor of the defendant rather than to his prejudice. The Court of Appeals found no error in the trial. This Court allowed the petition for certiorari in part, at least, upon the ground of defects in the record which are heretofore referred to.

The case on appeal contained what purported to be an affidavit charging the named defendant with driving a motor vehicle on the public highway at ninety miles per hour in a sixty-five mile zone. The line for the signature was blank. The line for the signature of the issuing officer was blank. The warrant of arrest was blank. The record failed to show any

hearing or finding of guilt. Here is the full record of the hearing in the district court as it came to us from the Court of Appeals:

"DISTRICT COURT JUDGMENT

"Let the Defendant pay a fine of $50.00 and the costs of Court.

"Defendant gives Notice of Appeal in open Court, to the Superior Court. Bond set in the amount of $600.00."

Defense counsel and the solicitor stipulated, "[T]he foregoing constitutes the Agreed Record and Agreed Case on Appeal."

Both the defense counsel and the Attorney General filed briefs in the Court of Appeals. Neither made any objection or called any attention to the defective condition of the record. The Court of Appeals conducted a review and found no error in the trial. After the case was certified here, defense counsel and the Attorney General filed additional briefs.

The district court, the superior court, and the Court of Appeals, as well as counsel for the State and for the defendant, at all stages, have ignored the defective condition of the case on appeal. However, in response to our demand for a sufficient record, the Attorney General by Motion in Diminution, which we allowed, filed an addendum which indicated that photostats were made of the original documents. The photostating process failed to disclose the signatures or the check marks on the documents. The judgment entered in the district court, by check marks, shows a finding of guilty on the speeding count and not guilty on the driving under the influence count.

The purpose of this discussion is to alert counsel and court officials that this Court, in reviewing criminal appeals, will require that the case on appeal show that the trial court had jurisdiction of the defendant and of the offense charged. A criminal court acquires jurisdiction of a defendant when he is brought before the court pursuant to arrest, or comes before the court voluntarily and submits himself to its jurisdiction. The court acquires jurisdiction of the offense by valid information, warrant, or indictment. The court must have jurisdiction both of the offender and of the offense in order to proceed to judgment.

**[4]** A case on appeal must show: (1) The organization of the trial court; (2) a valid charge (information, warrant, or indictment); (3) arraignment and plea; (4) verdict; (5) judgment; and (6) appeal entries. *State v. Tinsley,* 279 N.C. 482, 183 S.E. 2d 669. Obviously the clerk of the district court used a printed form and by means of check marks recorded the court proceedings. This practice, no doubt, saves time, but in case of challenge, the authenticity and accuracy of a check mark may be difficult to establish.

**[5]** The record before us, though deficient in certain particulars, nevertheless contains enough information from which we may conclude the superior court was regularly held and had jurisdiction of the defendant and of the offenses charged and that in the trial and in the review by the Court of Appeals prejudicial error is not made to appear.

No error.